**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| GISELLE CRAVENS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:24-CV-70-SRW |
| MARY ZIMMER, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of self-represented Plaintiff Giselle Cravens's third amended complaint. ECF No. 20. For the reasons discussed below, the Court will issue service on Defendants Nurse Mary Miller, Correctional Officer Sergeant York, Correctional Officer Mary Zimmer, and Correctional Officer Graham for an unreasonable search in violation of the Fourth Amendment in their individual capacities. The remaining claims will be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

On October 9, 2024, Plaintiff filed this civil rights action against fifteen employees at the Women's Eastern Reception, Diagnostic and Correctional Center (WERDCC). ECF No. 1. The complaint alleged numerous claims relating to a variety of issues over a 10-month period, including a body cavity search while Plaintiff was 33 weeks pregnant, retaliation, verbal abuse, destruction of her personal property, failure to protect, and improper conditions of confinement. *Id.* at 8-12.

On May 22, 2025, the Court ordered Plaintiff to file an amended complaint. ECF No. 9. The Court explained that Plaintiff could not bring unrelated claims against unrelated defendants, and needed to either pursue one transaction or occurrence, or one defendant. The Court directed Plaintiff on how to file an amended complaint, including how to format her statement of claim. She was explicitly directed to write each defendant's name and "set forth the factual allegations supporting her claim against that defendant." *Id.* at 3.

On June 26, 2025, Plaintiff filed an amended complaint against five employees at the WERDCC. ECF No. 10. Plaintiff alleged that on November 9, 2023, Defendant Sergeant York placed her in restraints and took her for a urinalysis. *Id.* at 3. Plaintiff was 33 weeks pregnant at this time. *Id*. She argues the stall and toilet were not properly checked before she entered. *Id*. at 4. After a bag of white powder was discovered in the toilet that Plaintiff was using, she was taken to Defendant Nurse Mary Miller. *Id*. Plaintiff was told a body cavity search would be performed and "they" threatened she would be punished if she did not consent to the search. *Id*. Sergeant York reported that Defendant Angela Messmer, the Warden of WERDCC, required an anal cavity search as well. *Id*. Plaintiff objected and a search was performed. *Id*. She did not specify who performed the search. Throughout her statement of claim, Plaintiff referred to "they" and "them" without a clear referent.

On September 4, 2025, the Court reviewed Plaintiff's amended complaint and gave her the opportunity to file another amendment. ECF No. 14. The Court again explained that Plaintiff needed to provide specific allegations against the defendants, and to avoid general or conclusory statements so that each defendant has notice of what he or she is accused of doing or failing to do. *Id.* at 4-5. She was reminded that "the filing of a second amended complaint completely replaces the original complaint and the amended complaint, so it must include all claims [she]

wishes to bring." *Id.* at 5. Plaintiff was once again directed to write each defendant's name and set forth the factual allegations supporting her claim against each defendant. *Id.* at 5-6.

On October 8, 2025, Plaintiff filed her second amended complaint. ECF No. 15. It was unclear who she wished to bring claims against, as she discussed the actions of individuals who were not listed in the caption. In her statement of claim, she wrote: "I previously sent all this info and enclosed is everything that I left out. I need more time." *Id.* at 3. In her three-page attachment, Plaintiff informed the Court that she was in administrative segregation and did not have access to her legal files. ECF No. 15-1 at 1. The Court found the second amended complaint deficient because it was largely blank and did not clearly name the defendants. ECF No. 16. Because Plaintiff indicated she needed more time due to her placement in administrative segregation, the Court allowed her one more opportunity to submit a proper complaint.

**Third Amended Complaint**

On February 27, 2026, Plaintiff filed an unsigned third amended complaint. ECF No. 17. On March 18, 2026, the Court directed her to resubmit her filing with her signature as required by Rule 11 of the Federal Rules of Civil Procedure. ECF No. 18. On March 30, 2026, Plaintiff filed a completely blank form complaint bearing only a caption and her signature. ECF No. 19. On April 8, 2026, Plaintiff filed a signed and completed third amended complaint, which the Court will treat as the operative pleading. ECF No. 20.

Plaintiff lists five Defendants in their official and individual capacities: (1) Nurse Mary Miller; (2) Correctional Officer Sergeant York; (3) Correctional Officer Mary Zimmer; (4) Correctional Officer Graham; and (5) Warden Angela Messmer. *Id.* at 2-3. Within her statement of claim, Plaintiff indicates that on November 9, 2023, "Defendants 1, 2, 3 and 4 conducted an illegal manual cavity search on [her] while [she] was 33 weeks pregnant (vaginal and anal)

without a warrant or [her] consent." *Id.* at 3. Although she indicates that Defendant 2 conducted the search, she also states that "he poked his head into the room without announcing himself." *Id.* She describes the incident to have felt like rape and sodomy. *Id.* at 8. Plaintiff claims now she suffers from "mental anguish, anxiety, panic attacks," "flashbacks of past trauma," "bowel problems due to them sticking something in [her] anal cavity," and "false contractions." *Id.* at 4-5, 8. She also claims her child has "something wrong with his hips," alluding to some fetal damage due to the search. *Id.* at 5.

Plaintiff then asserts that on December 26, 2023, she "started being retaliated on for the above incident." *Id.* at 4. She states she was "taken to the hole for a violation [involving] threats that was later found to be fake and then modified to creating a disturbance;" "various officers and staff have continued to ha[]rass [her] by making racial slurs;" and "false violations have been written, all due to 'suggestions' by one of more defendants." *Id.* She claims she was "harassed and placed in the hole" in "retaliation for the original incident." *Id.* Plaintiff does not provide any additional information as to these retaliation allegations. She does not name the specific defendants responsible or identify their exact conduct.

She further alleges that on September 6, 2024, an unnamed officer threw away her glasses case and extra lenses "with a malicious intent due to retaliation." *Id.* at 6. She does not specify whether this officer is a named defendant. She also indicates that on September 20, 2024, she "was retaliated on for an IRR (Informal Resolution Request) that [she] wrote on the officer who was now writing [her] a violation for making a false PREA (Prison Rape Elimination Act) allegation." *Id.* at 6. Again, she does not identify the officer.

As to "Defendant 5," who the Court assumes is the Defendant Warden, Plaintiff writes: "Defendant 5 is over everyone in WERDCC and has been aware of all of this discrimination,

harassment, and retaliation, and allowed it to continue. Complaints have been filed and all has been ignored." *Id.* at 7.

Plaintiff seeks monetary damages for physical pain and mental suffering due to the alleged illegal cavity search, and punitive damages for the violation of her constitutional rights. *Id.* at 8-9.

**Discussion**

**A. Plaintiff's Official Capacity Claims Against Defendants**

Plaintiff brings this action against all Defendants in their official capacities. The WERDCC is a state detention facility. Therefore, all five Defendants are employees of the Missouri Department of Corrections (MDOC). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). As such, Plaintiff's official capacity claims against Defendants are actually claims against their employer, the MDOC – an agency of the State of Missouri.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). In the absence of a waiver, the Eleventh

Amendment[1] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Therefore, since Plaintiff seeks money damages here, her official capacity claims are barred by the Eleventh Amendment and will be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."); *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

**B. Plaintiff's Individual Capacity Claims Against Defendant Warden Messmer**

Plaintiff's only allegation against Defendant Warden Messmer in the third amended complaint is that she is "over everyone in WERDCC and has been aware of all of this discrimination, harassment, and retaliation, and allowed it to continue. Complaints have been filed and all has been ignored." ECF No 20 at 7.

Plaintiff's allegation that the Warden was aware of unconstitutional actions by WERDCC employees is entirely conclusory as she does not describe what complaints were submitted to the Warden, when those complaints were filed, or the content of those complaints. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). And, even if complaints were submitted to the Defendant Warden, the courts have

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

found that simply sending "correspondence [to the warden] outlining [a] complaint . . . without more, does not sufficiently implicate the warden under § 1983." *Davis v. Arkansas Valley Corr. Facility*, 99 Fed. App'x 838, 843 (10th Cir. 2004) (unpublished decision); *see also Volk v. Coler*, 845 F.2d 1422, 1432 (7th Cir. 1988) (holding that director of state agency did not personally participate in constitutional violation merely because he was aware of grievance); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."); *Doyle v. Cella*, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (unpublished decision) (finding bare allegation that the defendant warden was "made aware" of constitutional violations insufficient to establish personal participation of the defendant).

Further, vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

Here, there is no indication that Warden Messmer directly participated in the body cavity search. Furthermore, there are no factual allegations to support a failure to train or supervise. Rather, Plaintiff apparently attempts to assert liability against Warden Messmer based on her position as Warden of WERDCC because she is "over everyone in WERDCC." ECF No. 20 at 7.

"[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Therefore, the individual capacity claim against Warden Messmer must be dismissed for failure to state a claim.

### C. Plaintiff's Individual Capacity Claims Against the Remaining Defendants

#### 1. Manual Body Cavity Search

Plaintiff alleges that on November 9, 2023, "Defendants 1, 2, 3 and 4 conducted an illegal manual cavity search on [her] while [she] was 33 weeks pregnant (vaginal and anal) without a warrant or [her] consent." ECF No. 20 at 4. The Court proceeds on the basis that "Defendants 1, 2, 3 and 4" reflects the order in which Plaintiff named the defendants in her form complaint. Defendant 1 is Nurse Mary Miller, Defendant 2 is Sergeant York, Defendant 3 is Officer Mary Zimmer, and Defendant 4 is Officer Graham. *Id.* at 2-4.

Plaintiff indicates that the search took place in "Defendant 1's room," which the Court understands to be Nurse Miller's medical office. *Id.* Although Plaintiff states that Defendant 2 was one of the four individuals who conducted the search, the third amended complaint also alleges that "he poked his head into the room without announcing himself." *Id.* Plaintiff does not further describe the search, except that the "baggie" the officers found in the toilet was not hers. *Id.* at 16.

As a result of the manual body cavity search, Plaintiff states she now suffers from "mental anguish, anxiety, panic attacks," "flashbacks of past trauma," "bowel problems due to them sticking something in [her] anal cavity," and "false contractions." *Id.* at 4-5, 8. She also claims her child has "something wrong with his hips," alluding to fetal damage due to the search. *Id.* at 5. She describes the event to have felt like she was "raped and sod[o]mized." *Id.* at 8.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Goff v. Nix*, 803 F.2d 858, 862 (8th Cir. 1986) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). A prisoner has a far lower expectation of privacy than most other individuals. *Id.* at 365. However, "a convicted inmate has rights under the Fourth Amendment against unreasonable searches of his body." *Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015).

In this case, Plaintiff alleges she was subjected to a manual rectal and vaginal search, which is the most intrusive form of a body cavity or strip search. The Supreme Court of the United States has commented that the "practice [of visual inspections]," let alone manual inspections, "instinctively gives us the most pause." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).

In determining whether a search was reasonable, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *United States v. Williams*, 477 F.3d 974, 975 (8th Cir. 2007). To that end, "searches involving penetration or public exposure of genitals are considered more intrusive than those not involving such means." *Robinson v. Hawkins*, 937 F.3d 1128, 1137 (8th Cir. 2019). In order to comport with the Fourth Amendment, "strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns," "should be conducted by officials of the same sex as the individual to be searched," and "should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion." *Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1008 (8th Cir. 2007).

As to the search being without a "warrant," the Court notes that Plaintiff is a convicted and sentenced state inmate who is incarcerated at a detention center. "There is no support for Plaintiff's claim that prison officials must obtain a court order [or warrant] before searching

inmates[.]" *Lindsey v. Doe #1*, No. 4:21-CV-01512-SEP, 2022 WL 1451680, at *3 (E.D. Mo. May 9, 2022).

While Plaintiff's allegation that Sergeant York looked in the room unannounced is puzzling, the third amended complaint also explicitly alleges that: four individuals, "Defendants 1 [Nurse Miller], 2 [Sergeant York], 3 [Officer Zimmer], and 4 [Officer Graham] conducted an illegal manual cavity search on [her] while [she] was 33 weeks pregnant (vaginal and anal)"; the incident felt akin to rape and sodomy; an unknown object was inserted into her rectum; at least one male was present; and she and her unborn child suffered injuries from the manual cavity search. *Id.* at 4-5, 8.

For these reasons, Plaintiff's third amended complaint survives initial review as to her claims for an unreasonable search in violation of the Fourth Amendment against Defendants Miller, York, Zimmer, and Graham in their individual capacities.

**2. Retaliation**

Lastly, Plaintiff alleges that, starting on December 26, 2023, she began to be "retaliated on for the above incident." ECF No. 20 at 5. She describes being subject to false violations by "one or more defendants," resulting in time spent in the hole, and states she was called racial slurs by "various officers and staff." *Id.* She alleges an unidentified officer threw away her glasses, and another officer told her to "kill herself." *Id.* at 6-7.

In allowing Plaintiff to amend her complaint three times, the Court repeatedly informed Plaintiff that her pleading must set forth factual allegations supporting her claim against each defendant. For example, when allowing the first amendment, the Court instructed Plaintiff that she must allege "facts explaining how each named defendant was personally involved in or

directly responsible for harming her" so that each "defendant will have notice of what he or she is accused of doing or failing to do." ECF No. 9 at 6. The Court clearly instructed:

> In the "Statement of Claim" section, Plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, Plaintiff should: (1) set forth the factual allegations supporting her claim against that defendant; (2) state what constitutional or federal statutory right(s) that defendant violated; and (3) state whether the defendant is being sued in his/her individual or official capacity, or both. If Plaintiff is suing more than one defendant, she should do the same thing for each one.

*Id.* at 5. In allowing a second opportunity to amend, the Court again included the above paragraph in bold lettering because Plaintiff's first amended complaint did not comply. ECF No. 14 at 5-6. In allowing a third opportunity to amend, the Court again included the bolded paragraph and continued to inform Plaintiff that she needed to explicitly describe which defendant did what unconstitutional conduct. ECF No. 16 at 5-6.

Plaintiff has not followed the Court's instructions. From the third amended complaint, the Court cannot discern which of the five named Defendants retaliated against Plaintiff or what each Defendant allegedly did to retaliate against her. "A federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action." *Drummer v. Corizon Corr. Health Care*, 2016 WL 3971399, at *1 (E.D. Mo. July 25, 2016). Thus, the Court will dismiss Plaintiff's retaliation claims against Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's official capacity claims against all Defendants brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity claim against Defendant Warden Angela Messmer brought pursuant to 42 U.S.C. § 1983 is **DISMISSED** without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the third amended complaint [ECF No. 20] as to Defendants Nurse Mary Miller, Correctional Officer Sergeant York, Correctional Officer Mary Zimmer, and Correctional Officer Graham for an unreasonable search in violation of the Fourth Amendment in their individual capacities.

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity retaliation claims against all Defendants brought pursuant to 42 U.S.C. § 1983 are **DISMISSED** without prejudice.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be filed herewith.

Dated this 7th day of October 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE